$$\begin{array}{cc} 12 & 75 \\ 75 & 501 \end{array}$$

## GIDDENS AND OTHERS v. BYERS' HEIRS.

Where the act of an agent is within the scope of his authority, and purports to be done, by virtue thereof on behalf of his principal, the principal is bound in equity, without regard to the form of the execution or signature, however solemn the instrument may be.

Where a deed purported, in the body thereof, to be made by virtue of a power of attorney, and was signed

JAMES B. FLOYD, [L. S.]
for WESLEY P. BYERS,

and the agent was duly authorized, it was held that the principal was bound.

It is perfectly immaterial whether the rights of the parties be legal or equitable. Whether they be the one or the other, they can be asserted in any cause in which they may arise, or in which they can arise under the rules and principles of either law or equity ; and that party must be victor in the contest whose rights are such, whether they be legal or equitable, as would entitle him ultimately, in either Court of law or equity, to recover the property and possession of the land. It follows from this, that it is not necessary to sue to perfect the defective execution of a deed under a power, but the deed, being under circumstances where a Court of equity would decree a more perfect deed, may be given in evidence in the same manner as if it had been legally executed.

Where an agent was authorized to do and transact all and singular the business of the principal, of every nature and description, and to make any sales or purchases for him and in his name, it was held that the agent had authority to transfer a judgment previously obtained by his principal, to the wife of the defendant in this judgment, and to annul a sale previously made under the judgment, at which his principal had become the purchaser.

Error from Red River. This action is brought by the heirs of Wesley P. Byers, against R. F. Giddens, who claims through mesne conveyances under a deed from Edward Hughart & Wife, for the recovery of a tract of land. The other defendants were brought in by vouchers to sustain the defence. It appears that the said Byers had recovered a judgment against Edward Hughart for nine hundred and ninety-four 34-100 dollars, with interest amounting to two hundred and fifty-five dollars, under which execution having issued, the land was levied and sold in August, 1848, for the sum of one hundred and seventy-six dollars and twenty cents, Byers, himself, through his attorney, having became the purchaser. On the sixth of September, 1848, the said Byers constituted James B. Floyd his general agent, authorizing him to do and transact all his business of every nature and description, and to make any sales or purchases for him and in his name. Under this power, the said Floyd, on the 25th November, 1848, assigned the judgment against Edward Hughart to Aldanne Hughart, who was his wife, for her own sole, separate use, reciting the consideration to be the sum of nine hundred and twenty-six dollars paid by the said Aldanne out of her separate property, " ratifying and confirming the right, title, claim and interest " in and to said judgment, &c., from him, the said Byers, unto " her, the said Aldanne Hughart, by the power vested in me" by the said power of attorney, and " also hereby making null " and void all sales heretofore made by virtue of an execution " issued upon said judgment." This was signed

                                JAMES B. FLOYD, [L. S.]
                          for WESLEY P. BYERS.

The execution was marked satisfied by Amos Morrill, attorney of Byers—the date of satisfaction not stated. The

plaintiffs recovered judgment, and the principal error assigned was the exclusion, as evidence, of the assignment of the judg-ment from Floyd to Aldanne Hughart.

*J. A. N. Murray*, for appellants. The first question pre-sented by the Record in this case is, " did the Court err in excluding the deed from Floyd as attorney of Byers to Aldanne Hughart as evidence ?"

It was contended by the counsel of appellees, and so deter-mined by the Court that it was the contract of Floyd alone, and not binding on Byers or his heirs. I admit the correct-ness of this decision, if we are to be governed in our Courts, in the introduction of testimony, by the strict rules of the Com-mon Law. But it does not follow that a suit in chancery would not compel Byers or his heirs to a specific execution of the contract.

" In equity, however, on the ground of aiding a defective " execution of a power, relief is given in cases where deeds " are by mistake sealed and delivered in the name of the attor-" ney instead of the principal. An agreement under seal by " an attorney for a principal, inoperative at law for want of a " formal execution in the name of the principal, is binding in " equity if the agent had authority." (1 Am. L. Cas. 432, and the authorities there referred to.)

" A conveyance which, by being executed in the name of " the attorney, transfers no interest at law, will be sustained " in equity as an agreement, and will be good against the " principal, and subsequent lien creditors."—(*Ib.*)

" If an agent sign his own name with *descriptione personæ* " (as J. I. J., as attorney for J. I.) to a bond for a conveyance, " though this is but the bond of the agent, yet if he was au-" thorized to bind the principal, the latter may be held in " equity to a specific execution." (1 Dana, 363.)

It will be seen from the foregoing authorities, that a Court of equity would have aided the defective execution of the deed from Floyd as attorney of Byers to Aldanne Hughart, and de-

creed a specific execution of the contract, as against Byers or his heirs. The question then arises, could the District Court on the trial of this cause grant the relief a Court of Chancery would have granted ? It will not be denied but that whatever a Court of Chancery could do can be done in the District Court under our blended system of practice.

II. It will doubtles be urged that the authority given by Byers to Floyd, was not such as would authorize him to convey real estate. It is true there is no special authority given to convey lands, but the power is general to do and transact all business of every description, to make sales and purchases in the name of Byers. This is sufficient to authorize him to transfer the judgment against Edward Hughart. (Story on Agency, 547, 611.)

Long acquiescence of the principal after knowledge of the acts done for him by another, will also, in many cases, be sufficient evidence of a ratification. If an agency actually existed, the silence or mere acquiescence of the principal, may well be taken as proof of a ratification. (2 Greenl. Ev. 60.)

" And if the silence of the principal is either contrary to his " duty or has a tendency to mislead the other side, it is con- " clusive."—(*Ib.*)

Examine the facts in this case, and see if Byers has not by his acts ratified the contract made by Floyd.

The endorsement of satisfaction on the execution by the attorney of Byers was a ratification of the contract.

By his acquiescence in the contract he has ratified it. It was his duty, if he did not intend to be bound by the contract, to have repudiated the same within a reasonable time, and given notice to Mrs. Hughart; but the facts show that he remained silent during his lifetime, and his heirs until the 28th June, 1852, after the land had been sold to Bagby and by Bagby to Giddens.

The charge of the Court in regard to the statute of limitations was incorrect, as the Sheriff's sale to Byers for the reasons above could not have divested Hughart of all title to the

200 acres including the lands in controversy, and therefore
Giddens might well plead the statute of three years.

The Court erred in overruling the motion for a new trial.

This is regarded as sufficiently argued under the other as-
signments.

*Morrill & Dickson,* for appellees. As the appellants, in
their argument, abandon all the errors assigned except one,
the first, the appellees will also confine their remarks to the
same.

In order to ascertain the truth of the position assumed by
appellants, it will be necessary for us to ascertain first, what
the agent actually did, and secondly, what he was authorized
to do.

It will be perceived that at the Fall Term of 1847, Byers
obtained a judgment against Hughart for $994 34, debt, and
two hundred and fifty-five dollars, interest, making twelve
hundred and forty-nine dollars and thirty-four cents. On the
1st day of August, 1848, Byers received by the sale of the
land in controversy, and as a part payment of his judgment,
$176 20. There was then due upon the judgment of $1249
34, after deducting the $176 20, the amount paid, $1073 14
exclusive of one year's interest, which is $93 84, $1166 98
being the amount due in the fall of 1848.

On the 25th November, 1848, Floyd, the supposed agent,
acknowledged that in consideration of $926, or that amount
in land, paid him by Aldanne Hughart, he conveyed to her
the aforesaid judgment, clearly showing that for $926 00 he
conveyed a judgment for $1166 98, whereby she made the
sum of $240 98. The judgment was all he sold and all he
pretended to sell, and all she pretended to purchase.

It is admitted that the instrument further adds, " hereby
making null and void all sales heretofore made by virtue of
an execution issued upon said judgment." But there was no
consideration paid for this. And still more, the agent, as

such, had no authority for this. His authority extended to transacting his principal's business, but not to destroy it; to purchase and sell but not to render null and void what had been previously done by others. (Story on Agency, Sec 21.)

But the most fatal part to the whole transaction is, that Floyd does not transact business in the name of Byers, but in his own name. Wherever Byers' name is mentioned, it is in the third person, and although he incidentally mentions that he had a power of attorney from Byers, yet he does not act as such agent, nor under either the seal or the name of the principal. (See Story on Agency, Sec. 147, 148, 150; Am. L. Ca. 422.)

The appellant, in his argument, admits that the conveyance is in the name of the agent, and not the principal, but insists that equity requires that the conveyance should be made, as it was the intention of the parties, and as a consideration of $926 has been paid. I have already shown that for that consideration of $926 00, she has received a judgment of $1166 98, being an excess over what she paid of $240 98.

Were this suit to set aside the conveyance of the judgment or to enforce it adversely to Mrs. Hughart, I admit that equity would require that before we could do this, we should repay the $926, or let her have the entire control of the judgment, as it was when the transaction took place, by her paying the $240 98; but certainly she cannot complain as long as she remains in undisturbed possession of what she purchased, and what she has probably long since realized.

HEMPHILL, CH. J. The main ground of objection to the instrument was in the particular form in which it was executed by the agent, viz.: that instead of its being signed James B. Floyd for Wesley P. Byers, it should have been signed Wesley P. Byers by James B. Floyd.

The rule as to the mode of execution, as laid down in Story on Agency, is, that in written contracts, (subject to qualifi-

cations and exceptions) in order to bind the principal the instrument must purport on its face to be his contract, his name must be inserted in it, and signed to it, and not merely the name of the agent, even though the latter be described as agent, in the instrument; at least, the terms of the instrument should clearly show that the principal is intended to be bound thereby, and the agent acts plainly as his agent in executing it; (Sec. 147;) and in Section 148, it is said that this rule is true in regard to solemn instruments under seal, although not so as to instruments not under seal; and that a deed for lands, signed A. B. for C. D. is the deed of the agent, not of the principal. It is added, however, in substance, that where a release is executed for a valuable consideration under a power of attorney by the agent in his own name, though not binding in law on the principal, yet it will be recognized in equity, and the principal will be compelled to execute a release in his own name, or the agent to execute a proper release, or such relief be given as is adapted to the circumstances. In subsequent sections, that learned jurist, shows that the rule is not applicable to unsolemn instruments, and especially of commercial and maritime contracts; and in these, if it can, from the whole instrument, be collected that the intention is to bind the principal and not the agent, Courts of Justice will adopt that construction of the contract. Thus, where a promissory note is signed A. B., agent for C. D., it is held to be the note of the principal, and not of the agent. And in Section 162, it is asserted as a general rule, that in all cases where an agent has contracted within the sphere of his agency, and the principal is not by the form of the contracts bound at law, a Court of Equity will enforce it against the principal, upon principles *ex æquo et bono.*

The defendants contend that this deed, though inoperative in law, is binding in equity, and should have been admitted as evidence; and in support of this position, they rely on authorities not accessible to this Court, but which were produced in argument, and extracts have been inserted in their

briefs. The first authority, as cited by counsel, is from the 1st American Leading Cases, 432, and is to the effect that in equity, on the ground of aiding the defective execution of a power, relief is given in cases where deeds are by mistake sealed and delivered in the name of the attorney instead of the principal. An agreement under seal, by an attorney for a principal, inoperative at law for want of a formal execution in the name of the principal, is binding in equity, if the agent had authority. A conveyance which, by being executed in the name of an attorney, transfers no interest at law, will be sustained in equity, as an agreement, and be -good against the principal and subsequent creditors. (Ib.) And 1st Dana, 365, is also cited as authority for the position, that, if an agent sign by his own name with *descriptione personæ* (as I. T. J. as attorney for J. T.) to a bond for a conveyance, though this is but the bond of the agent, yet if he was authorized to bind the principal, the latter will be held in equity to a specific execution.

It appears surprising, that in any enlightened system of jurisprudence, it should have ever been held that the particular mode of executing an instrument, under a power of attorney, should have the opposite effects of binding or absolving the principal, or making it in the one case the contract of the principal, in the other that of the agent, although on any plain common sense construction of the language and acts of the agent, it might be manifest that he was acting not for himself, but for the principal and under his authority. Can any phrase or act demonstrate more clearly the fact of agency, than his signature as agent, as thus A. B. for C. D., or A. B. agent for C. D. Is the fact that one is principal and the other agent shown more clearly by the signature of the name of the principal first and that of the agent afterwards, than it is by signing the agent's name first and the principal's last? or, in other words, does the signature thus, C. D. by A. B., show more clearly that C. D. is the principal and A. B. the agent, than does the signature in this form, A. B. agent for C. D. ?

In either case and in all cases in which an agent acts as such, it is the agent who acts. The principal is made to act but only through the agent; and whether the expression be that the principal is acting by the agent, or that the agent is acting for him, it is still but the act of the agent. Express it as you may, whether it be said that he is acting as agent for C. D., or that C. D. is acting through or by him, it all amounts to the same thing. If any act is done, it must be done by the agent at last; and if it be within the scope of his authority, it must stand as the act of the principal and be ratified and confirmed by him.

The fact of the execution of the power in either the one mode or the other, makes no difference and has no effect any where except in the hard, naked regions of the Common Law, and there only as to instruments under seal. No such sophistical distinctions and absurdities are tolerated in relation to instruments not under seal, executed by an agent in commercial or maritime contracts, and, in fact, in contracts affecting the ordinary transaction of life. Such distinction is repudiated by the doctrines and principles of equity. It was totally unknown to the Spanish law, and is believed to have no existence in any system of jurisprudence derived from the Roman fountains.

Let us briefly examine this assignment. The agent therein expressly confirms the right, title, claim and interest in and to said judgment from him, the said Wesley P. Byers, unto her, the said Aldanne Hughart. But how does he do this? On his individual right or capacity? Not at all, for he expressly declares it to be by the power vested in him by the power of attorney, legally authenticated, from the said Byers unto himself, the said agent. Could the fact of his agency and that Byers was principal, appear more perspicuously by any other phraseology, or by the averment that Byers, himself, by Floyd, as agent, confirmed the right and title in said judgment?

From the doctrines, as cited from Story and the other au-

thorities, it appears that in equity the defective execution of this power (if it be defective) would be aided, and a specfic execution of the contract decreed against Byers and his heirs. The question then arises, whether the equitable rights of the parties, under this assignment, admitting it be defective and inoperative at law, could be set up against the legal rights of the plaintiffs in an action of trespass to try title. There is no doubt that this inquiry must be responded to in the affirmative. It is perfectly immaterial whether the rights of the parties be legal or equitable. Whether they be the one or the other, they can be asserted in any cause in which they arise, or in which they can arise under the rules and principles of either law or equity. And that party must be victor in the contest, whose rights are such, whether they be legal or equitable, as would entitle him ultimately in either Courts of law or equity, to recover the property and possession of the land.

If the execution of this instrument be defective, it would at least have the effect of an agreement in equity; and this being executed on a valuable consideration already paid, is a good defence against the action, and will protect the defendants against all disturbance of their possession. If this instrument was rejected on the ground of the supposed defective execution of the power, such rejection was unquestionably erroneous.

Another objection to the instrument is, that it was not authorized by the powers vested in the agent; that his powers, though general, were not sufficiently broad to authorize him to annul deeds, and set aside purchases already made, &c. It appears from the letter of attorney, that the grants in it are very ample. The agent is authorized to do and transact all and singular the business of the principal, of every nature and description, and to make any sales or purchases for him and in his name. The annulling of the sales under the execution was in effect nothing but the re-sale of the lands to Hughart, or rather the sale of them to his wife. For this she had paid a valuable consideration out of her own property, not liable to

the debts or executions of her husband. It is true that she did not pay the full amount originally due on the execution, but she advanced a large sum, and it was for the plaintiff in execution or his agent to determine whether it was sufficient to induce him to relinquish his rights under the judgment and execution and the sales thereupon made. He exercised his judgment, and determined to accept the consideration and transfer his rights. And the agent having sufficient powers to perform this act, it cannot be gainsayed or repudiated by the principal or his heirs.

Were this judgment permitted to stand, its effect would be to strip Mrs. Hughart of nine hundred and twenty-six dollars, without any consideration or compensation offered or paid. Upon the character of such a transaction it is unnecessary to comment. It is one which can receive no countenance or aid from Courts of equity or justice. Believing that the Court erred in excluding the instrument offered in evidence, it is ordered that the judgment be reversed and the cause remanded for a new trial.

Reversed and remanded.